UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

UNITED STATES OF AMERICA

        -against-                  15 Cr. 417 (RWS)

                                      SENTENCING
EMMANUEL CHIDI UGWU,            OPINION

                  Defendant.

-------------------------------------X

**Sweet, D.J.**

On May 19, 2017, Emmanuel Chidi Ugwu ("Defendant" or "Ugwu") pleaded guilty to conspiracy to distribute and possess with intent to distribute 100 grams and more of heroin, with the intent to import such substance into the United States. Based on the conclusions set forth below, Ugwu will be sentenced to 108 months' imprisonment, subject to the scheduled sentencing hearing on September 26, 2017.

**Prior Proceedings**

Ugwu was named in a one-count indictment filed in the Southern District of New York on June 20, 2015. Count One charges that from at least March 2015, through June 25, 2015, in

1

the Southern District of New York and elsewhere, Ugwu and other individuals conspired to distribute and possess to distribute one kilogram and more of heroin, intending and knowing that such substance would be imported into the United States from a place outside thereof, in violation of 21 U.S.C. §§ 812, 959(a), 960(a)(3), 960(b)(1)(A), and 963.

On May 19, 2017, Ugwu appeared before the Honorable Gabriel W. Gorenstein and allocuted to his conduct as charged in Count One.

Ugwu is scheduled to be sentenced on September 26, 2017.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

3

## The Defendant

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

## The Offense Conduct

The Court adopts the facts set forth in the PSR with respect to the offense conduct. These facts are summarized, in brief form, below.

The investigation that led to Ugwu's arrest and indictment was conducted by the Drug Enforcement Agency ("DEA").

Between March and June 2015, Ugwu, who was based in Tanzania, agreed with others (including a series of drug couriers and a money launderer) to help import heroin into the United States. Ugwu understood that heroin would be resold in New York by a purported drug distributor who was, in fact, a DEA undercover agent (the "UC").

In late March 2015, Ugwu spoke with the UC by telephone about helping the UC move kilograms of heroin (the "Kilograms")

4

from a stash location in Tanzania to Kenya, with the understanding that the UC had made arrangements to retrieve the heroin from Kenya for distribution in New York. Over the course of a series of recorded telephone calls, Ugwu agreed to arrange for the Kilograms' transportation via Ugwu's courier network. Ugwu explained to the UC that the rate for the transportation would be $1,000 per kilogram. The UC agreed to Ugwu's terms, but emphasized that the UC would not make any profit on the transaction until the Kilograms were sold in Manhattan. On April 2, 2015, Ugwu advised the UC that one of Ugwu's criminal associates had recovered the Kilograms from where the UC had arranged for them to be shipped. Ugwu also emailed a photograph to the UC documenting the Kilograms' retrieval.

In early April 2015, the DEA caused two $1,000 wire transfers to be sent to Ugwu via Western Union, whereupon Ugwu agreed to begin transferring the Kilograms to Kenya. On April 8, 2015, in coordination with Kenyan law enforcement, the DEA recovered two of the Kilograms from one of Ugwu's drug couriers in Nairobi, Kenya. The Kilograms had been stitched into the lining of backpacks.

On April 17, 2015, the UC deposited an additional $5,000 into an account identified by Ugwu while the UC was at a bank in

Manhattan. The UC confirmed that payment to Ugwu during a recorded telephone call while the UC was in Manhattan. Shortly thereafter, Ugwu informed the UC that the UC could make further payments to an individual in the U.S. (the "Associate"), who handled Ugwu's finances in the U.S.

On April 23, 2015, the UC met with the Associate in Virginia. During this audio- and video-recorded meeting, the UC gave the Associate $6,000 cash and indicated that the money was payment to Ugwu for "bags" that had been transported. During the recorded meeting, the UC called Ugwu, in the Associate's presence, to ensure that the UC, Ugwu, and the Associate were all in agreement with respect to the UC's cash payment having been received.

Over the ensuing weeks, more Kilograms were delivered to Kenya by Ugwu's couriers and recovered by law enforcement. In total, Ugwu is being held accountable for between three and ten kilograms of heroin.

In late June 2015, Ugwu met with two undercover DEA agents ("the Other UCs"), who were posing as weapons traffickers. During that meeting, Ugwu referenced his dealings with the UC and indicated that he still had some of the UC's Kilograms. Ugwu

agreed to meet with the Other UCs again in Haiti to discuss a possible weapons deal that is unrelated to the present offense.

Ugwu was arrested in Atlanta, Georgia, on September 2, 2015, while in transit to what he understood to be the follow-up meeting with the Other UCs.

**The Relevant Statutory Provisions**

For Count one of the Indictment, to which Ugwu pleaded guilty, the minimum term of imprisonment is five years and the maximum term is forty years. 21 U.S.C. §§ 963, 960(b)(2)(A). The offense is a Class B felony. 18 U.S.C. § 3559. The maximum fine is $5,000,000. 18 U.S.C. § 3571(b). A special assessment of $100 is mandatory. 18 U.S.C. § 3013. The Court must impose a term of supervised release of at least four years. 21 U.S.C. § 960(b)(2). The defendant is ineligible for probation because it is expressly precluded by statute. 21 U.S.C. § 960(b)(2)(A).

**The Guidelines**

The 2016 edition of the United States Sentencing Commission Guidelines Manual, incorporating all Guideline amendments, has

been used in this case for calculation purposes. U.S.S.G. § 1B1.11.

The Guideline for 21 U.S.C. § 963 is found in U.S.S.G. § 2D1.1. Pursuant to that section, the base offense level is 32. U.S.S.G. § 2D1.1(a)(5). Because the Defendant was an organizer, leader, manager, or supervisor in criminal activity other than described in (a) or (b), a 2-level enhancement is applicable. U.S.S.G. § 3B1.1(c). The adjusted level for Count One is 34. Because the Defendant has clearly demonstrated acceptance of responsibility for the offense, a two-level sentence reduction pursuant to Section 3E1.1(a) applies. Also, because the Defendant has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty, the offense level is decreased by one additional level. U.S.S.G. § 3E1.1(b). The total offense level is 31.

Ugwu has no criminal history points; therefore, the Criminal History Category is I. U.S.S.G. Ch. 5, Pt. A.

Based on the total offense level of 31 and a Criminal History Category of I, the Guideline imprisonment range is 108 to 135 months. Id. As Count One is a Class B felony, the

Guideline range for a term of supervised release is four to five years. U.S.S.G. § 5D1.2(c). Ugwu is ineligible for probation because it is expressly precluded by statute. 21 U.S.C. § 960(b)(2)(A).

The fine range for this offense is $15,000 to $5,000,000. If the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000, or (B) a fine for each day of violation, the Court may impose a fine up to the maximum authorized by the statute. U.S.S.G. §§ 5E1.2(c)(4), 5E1.2(h)(1).

Costs of prosecution shall be imposed on Defendant as required by statute. U.S.S.G. § 5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. U.S.S.G. § 5E1.2(d)(7) and 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 24, 2016, provides a daily cost of $88, a monthly cost of $2,665, and an annual cost of $31,976 for imprisonment.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), having considered the Guidelines and all of the factors set forth in § 3553(a), and having reviewed the Presentence Investigation Report, the Court will impose a sentence within the Guidelines range.

## The Sentence

For the instant offense, Emmanuel Chidi Ugwu shall be sentenced to 108 months' imprisonment. The term of imprisonment shall be followed by a term of four (4) years of supervised release.

As mandatory conditions of his supervised release, Defendant shall:

(1) Not commit another federal, state, or local crime.

(2) Not unlawfully possess a controlled substance.

(3) Refrain from any unlawful use of a controlled substance. Defendant must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the Court.

(4) Cooperate in the collection of DNA, as directed by the probation officer.

The standard conditions of supervision (1-13) apply with the following special conditions:

(1) Defendant must obey the immigration laws and comply with the directives of immigration authorities.

(2) Defendant must provide the probation officer with access to any requested financial information.

(3) Defendant must not incur new credit charges or open additional lines of credit without the approval of the probation officer unless he is in compliance with the installment payment schedule.

(4) Defendant must submit his person, residence, place of business, vehicle, and any property or electronic devices under his control to a search on the basis that the probation officer has reasonable suspicion that contraband or evidence of a violation of the conditions of Defendant's probation/supervised release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant must inform any other residents that the premises may be subject to search pursuant to this condition.

11

It is further ordered that Defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

Because the Defendant does not have the ability to pay a fine, the fine has been waived in this case.

Further, the Defendant shall forfeit to the United States property as delineated in the Indictment. As such, any and all property constituting or derived from any proceeds Defendant obtained directly or indirectly as a result of said offense and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offense alleged in Count One must be forfeited to the United States. 21 U.S.C. §§ 853, 970.

It is so ordered.

**New York, NY**
**September 20, 2017**

_____
ROBERT W. SWEET
U.S.D.J.